**Affirmed and Opinion Filed February 5, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00992-CR
### No. 05-12-00993-CR

**ANTHONY ALAMIA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 199-82134-2011, 199-82135-2011**

## OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice FitzGerald

Appellant was charged by two indictments for online solicitation of a minor. The trial court found appellant guilty as charged in the first indictment and guilty on one of two counts in the second indictment, and assessed punishment at ten years' imprisonment, probated for ten years, and a $1,000 fine. In four issues on appeal, appellant contends the trial court erred in admitting his involuntary statement, the evidence was insufficient to support his conviction, and the Texas online solicitation of a minor statute is unconstitutional because it violates the due process and due course of law provisions of the United States and Texas constitutions. Finding no reversible error, we affirm the trial court's judgments.

# I.   BACKGROUND

Sergeant Chris Meehan is a member of the Internet Crimes Against Children Task Force that investigates online predators. In late June and early July, Meehan entered a Yahoo Internet chat room posing as a thirteen-year-old girl.  Meehan used the screen name "brooke_chick13." In late June, he began getting messages from appellant using the screen name "a420kindofguy." During the conversations that followed, brooke_chick13 told a420kindofguy that "she" was thirteen and a420kindofguy responded that he was a lot older than that.  He told brooke_chick13 that he worked for AT&T Wireless adding cell sites and lived with his girlfriend and asked her a number of sexually-explicit questions. He wanted to know how far she had gone with a boy, details about who touched whom and how, whether she liked it, whether she "play[ed]" with herself, whether she had ever seen "man parts," whether she and a friend wanted to takes turns on him, and other such topics.  He also inquired if she deleted her chats.

Eventually, appellant displayed his penis and masturbated for brooke_chick13 on his webcam. Meehan recorded this display. Appellant also asked brooke_chick13 to meet him the following week at a lake near her house where they could hide and engage in oral sex, possibly with one of her friends.  He told brooke_chick13 he did not want to pick her up in his car to take her to the lake, and Meehan testified this was because predators are careful not to be seen with a minor in their car.

As a result of his chats with a420kindofguy, Meehan obtained information on the suspect's screen name, the AT&T account information, and the IP address for the suspect's computer, which he traced to a house owned by April and Derek Crowell. April's name was also listed as the subscriber on the AT&T internet account a420kindofguy used.  Because Derek was the only male associated with that house at that time, Meehan initially thought he was a420kindofguy and

obtained a warrant for Derek's arrest. When Meehan observed April leave the house with a man he believed to be Derek, he followed them to Wal-Mart.

The Mesquite police made the initial contact with April and the man they thought was Derek in the parking lot. As Meehan approached, the officers patted the man down, separated him from April, and handcuffed him. They did not place him under arrest. In questioning the man, Meehan subsequently discovered he was not Derek but appellant. Initially, appellant denied being involved in the chats, but after Meehan showed him images he finally admitted that the images were of him and he had chatted with brooke_chick13. When Meehan showed appellant a picture of an individual from the neck down, Meehan stated "That's you, brother." Appellant admitted the image was of him. Once he admitted to the offense, Meehan placed him under arrest. Meehan subsequently discovered the screen name a420kindofguy belonged to appellant and it was appellant who lived with April in her house. The officers' encounter with appellant in the Wal-Mart parking lot was recorded.

Derek, the man officers initially believed was a420kindofguy, testified at trial. Derek stated that he is April's brother and he, appellant, appellant's eighteen-year-old godson, and Derek's two small nephews lived in April's house in June 2011. Derek was away in June and July doing an on-campus internship. He explained that appellant and April were not married but had been living together for five or six years and had children together. Appellant worked for AT&T putting up cell sites. Derek denied ever having the Yahoo screen name a420kindofguy or sending any of the chat messages. He described appellant's godson as five feet nine inches tall with lighter skin and a thinner build than appellant. When shown the internet video of a420kindofguy, Derek testified that the man was not appellant's godson and he was certain it looked like appellant.

The trial court found appellant guilty of two counts of online solicitation of a minor for sending sexually explicit communications to brooke_chick13 and not guilty of soliciting a meeting with her with the intent to have sexual contact.

## II.    ANALYSIS

*Admission of the Oral Statement*

In his first issue, appellant argues that his statements to Meehan in the Wal-Mart parking lot resulted from custodial interrogation without article 38.22 or *Miranda* warnings and were involuntary. Therefore, appellant contends the trial court erred in admitting these statements. The State responds that appellant was not in custody, or alternatively, any error was harmless.

When the State offered appellant's recorded interview at Wal-Mart as exhibit 1, appellant objected under the Fifth and Fourteenth Amendments, article 1, sections thirteen and nineteen of the Texas Constitution, and article 38.22 of the code of criminal procedure. Prior to ruling, the trial judge heard the testimony of Sergeant Meehan, as well as appellant's limited testimony in support of his objections and motion to suppress.

Appellant testified that he was approached by three to four Mesquite police officers. One of the officers told appellant he thought he was going to run, and handcuffed him. He was already handcuffed when Meehan approached him, identified himself, and asked questions about the incident.

Appellant believed he was under arrest, and was never told he was free to leave. He was not advised that he could refuse to answer questions or that he had a right to a lawyer. He admitted, however, that no one told him he was under arrest until he told Meehan that he sent the chat messages to brooke_chick13.

Meehan testified that by the time he met appellant in the Wal-Mart parking lot, the Mesquite police had already separated appellant from his companion and had handcuffed him.

–4–

The officers mistakenly thought appellant was Derek, and thought that Derek was the perpetrator (a420kindofguy). Meehan did not realize that appellant was actually the suspect he was looking for until appellant admitted that the images and chat messages were his. According to Meehan, until appellant admitted guilt, he was not under arrest and was free to go.

After hearing the evidence, the trial court ruled that appellant was in custody and should have been advised of his *Miranda* rights once Meehan realized appellant was the perpetrator and appellant became the focus of the investigation. As a result, the judge suppressed all of appellants' statements after he became "the focus of the investigation." In so ruling, the trial court made some informal findings of fact. The court found that Meehan was originally looking for Derek and did not realize appellant was the perpetrator until he identified him by saying, "That's you, brother." The court also found that Meehan initially detained and questioned appellant as part of an investigation.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*,

154 S.W.3d 604, 607 (Tex. Crim. App. 2005). In conducting our review, we must view the evidence in the light most favorable to the trial court's ruling. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

The warnings required by *Miranda* and article 38.22 are intended to safeguard a person's privilege against self-incrimination during custodial interrogation. *Gardner v. State*, 306 S.W.3d 274, 293 (Tex. Crim. App. 2009). Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A person is in custody only if, under all the objective circumstances, a reasonable person would believe her freedom of movement was restrained to the degree associated with an arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). In determining whether a suspect is in custody, the appropriate inquiry is "whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). The determination of custody is made on an ad hoc basis and depends on the objective circumstances, not on the unexpressed subjective views harbored by either the questioning officer or the person being questioned. *Dowthitt,* 931 S.W.2d at 254–55. The interrogation aspect of custodial interrogation has been defined as express questioning or words and actions that the police should know are reasonably likely to elicit an incriminating response. *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

A person held for investigative detention is not "in custody." *Dowthitt,* 931 S.W.2d at 255. Custody is not established during an investigative detention simply because the suspect is not able to leave until the investigation is completed. *Parker v. State*, 710 S.W.2d 146, 147 (Tex. App.—Houston [14th Dist.] 1986, no pet.). In addition, placing a person in handcuffs does not automatically mean that the person is in custody. *Balentine v. State*, 71 S.W.3d 763, 771 (Tex.

Crim. App. 2002); *see also Turner v. State*, 252 S.W.3d 571, 580 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding suspect not in custody when officer handcuffed him for officer safety while transporting him to police station).

In the instant case, we need not determine whether the trial court erred in admitting the entire videotape into evidence because even if there was error, there was no harm. Because the claimed error is of constitutional magnitude, we apply rule 44.2(a). *See* TEX. R. APP. P. 44.2 (a); *see also Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) (applying rule 44.2(a) analysis to *Miranda* violation). Under this standard, we must reverse unless we determine beyond a reasonable doubt that the trial court's failure to suppress these statements did not contribute to appellant's conviction or punishment. *See* TEX. R. APP. P. 44.2 (a); *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).

Appellant does not demonstrate that the trial court considered the portion of the audiotape where he admits he is the individual in the photograph — this admission is in the portion of the tape the court suppressed. The portion of the videotape the trial court declined to exclude shows only appellant's denial of any involvement in the offense. Thus, none of his admissions to the offense were in evidence, and he made no incriminating statements. In addition, when Meehan testified that appellant admitted to committing the offense, appellant made no objection. Therefore, any exculpatory impact his denials may have had was negated. Finally, as discussed more fully in conjunction with the second issue, there was other evidence that established appellant as the perpetrator, including the IP address and internet provider records linked to the computer and address where appellant resided, and where the other two males in residence were excluded as the perpetrator. Therefore, we conclude beyond a reasonable doubt that the admission of the first portion of the audiotape did not contribute to appellant's conviction or punishment. Appellant's first issue is overruled.

*Sufficiency of the Evidence*

In his second issue, appellant asserts that the evidence is insufficient to support his conviction for online solicitation of a minor. According to appellant, the only evidence establishing his identity "came from appellant" by way of his responses to the questions Meehan posed about his identity while showing appellant a picture of a torso sent over electronic mail.[1]

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. This standard recognizes "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weight the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; see also *Adames*, 353 S.W.3d at 860. The jury, as the fact finder, is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We defer to the jury's determinations of witness credibility, and may not substitute our judgment for that of the fact finder. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (in conducting legal sufficiency analysis, appellate court "may not re-weigh the evidence and substitute our judgment for that of the jury").

A person commits the offense of online solicitation of a minor if (1) he is 17 years of age or older and, with the intent to arouse or gratify any person's sexual desire, intentionally

---

[1] It is not entirely clear which "admissions" appellant is complaining about. Appellant denied any involvement during Meehan's initial questioning, and the trial court excluded the portion of the tape after Meehan stated "That's you, brother." As a result, there were no "admissions" in evidence from the audiotape. Based on a sentence at the conclusion of appellant's argument, we assume his complaint is directed toward Meehan's testimony about his confession.

communicates in a sexually explicit manner with a minor or provides sexually explicit material to a minor over the Internet, by email, text message, or through some other online means or (2) he knowingly solicits a minor to meet anyone with the intent that the minor will engage in sexual activity with another person. *See* TEX. PENAL CODE ANN. §§ 33.021(b)(1) & (2), (c) (West 2012). Subsection (a) defines "minor" as "an individual who represents himself or herself to be younger than 17 years of age" or "an individual whom the actor believes to be younger than 17 years of age." TEX. PENAL CODE ANN. § 33.021(a)(1); *Maloney v. State*, 294 S.W.3d 613, 625–26 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). If the minor is younger than 14 years of age or the actor believes he or she is younger than 14, the offense is raised to a second-degree felony. TEX. PENAL CODE ANN. § 33.021(f).

Here, appellant was charged with intentionally sending brooke_chick13, an individual he believed was thirteen years old, sexually explicit messages and images of his penis and masturbation over the Internet. Appellant complains that without Meehan's testimony concerning his confession to the crime, the evidence is not sufficient to demonstrate that he was the individual transmitting the communications.

As previously noted, when Meehan testified that appellant admitted he was the person depicted in the photograph, appellant failed to object. To preserve error for appellate review, a timely and specific objection is required. TEX. R. APP. P. 33.1(a)(1)(A). In other words, the objecting party must let the trial judge know what he wants, why he thinks he is entitled to it, and do so clearly enough for the judge to understand him at a time when the judge may do something about it. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). Because appellant failed to assert a timely objection to the testimony, any complaint about its admissibility has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A).

But even without Meehan's testimony concerning appellant's admission, the evidence is sufficient to support appellant's conviction. Meehan testified about the paper trail from a420kindofguy to the computer at the house where appellant lived. The Yahoo records introduced into evidence showed that the IP address used for the chats was connected to the address where appellant resided. The records showed that a person named "Tony A" had signed up for the screen name a420kindofguy. Other records showed the dates and times of the chats with brooke_chick13.

The unique and personal identifying information that a420kindofguy divulged online did not apply to any of the other males living in the home. Specifically, appellant revealed that he worked for AT&T Wireless adding cell sites, and he lived with his girlfriend. Derek testified that appellant lived in the home with April during the time in question, and had always worked for AT&T Wireless on its cell sites. Derek also testified that he was not living in the home at the time the chats occurred and a420kindofguy was not his screen name. Derek positively identified appellant's torso in a video recording he was shown, and also eliminated the possibility that the photo was of the third male in the house based on the man's build and color. Derek also testified that the third male had never worked for AT&T. Based on this evidence, a rational jury could reasonably conclude that appellant was a420kindofguy and had committed the offense. Appellant's second issue is overruled.

***Constitutionality of the Statute***

In his third and fourth issues, appellant argues the online solicitation of a minor statute violates due process and due course of law under the United States and Texas Constitutions because the definition of "minor" is overly broad. According to appellant, the definition is overly broad because it encompasses anyone who represents himself to be a minor, regardless of age. We disagree.

When a statute is challenged as unconstitutional, we ordinarily begin with a presumption that the statute is valid and the Legislature has not acted unreasonably or arbitrarily. *See Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The party challenging the statute has the burden to establish it is unconstitutional. *Id.*; *but see Ex Parte Lo*, No. PD 1560-12, 2013 WL 5807802 at *1 (Tex. Crim. App. Oct. 13, 2013) (applying reverse presumption of constitutionality to content-based regulations). If a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity. *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). We review the constitutionality determination de novo, and must uphold the statute if there is a reasonable construction that will render it constitutional. *Render v. State*, 316 S.W.3d 846, 856 (Tex. App. —Dallas 2010, pet ref'd).

There are two types of challenges to the constitutionality of a statute: the statute is unconstitutional as applied to the defendant, or the statute is unconstitutional on its face. *Fluellen v. State*, 104 S.W.3d 152, 167 (Tex. App.—Texarkana 2003, no pet.). A party seeking to invalidate a statute "on its face" bears a heavy burden of showing that the statute is unconstitutional in all of its applications. *United States v. Salerno*, 481 U.S. 739, 745 (1987). In so doing, the challenger must establish that no set of circumstances exists under which the statute is valid. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

Appellant challenges the statute on its face, focusing on the way in which the statute defines "minor." The statute defines "minor" as:

> (a) an individual who represents himself or herself to be younger than 17 years of age; or
>
> (b) an individual whom the actor believes to be younger than 17 years of age.

TEX. PENAL CODE ANN. § 33.021(a) (1). Appellant contends the first part of this definition — an individual who represents himself or herself to be younger than 17 years of age — is unconstitutional because it "transforms [the statute] into a strict liability statute." According to appellant, the statute is a strict liability statute because it nullifies any proof of criminal intent as to age. Appellant further asserts the statute is unconstitutional because it denies him the opportunity to rebut or explain evidence against him by presenting a mistake of fact defense.

Appellant does not argue that the due course of law provision in the Texas Constitution affords greater protection that the Due Process clause of the federal constitution, so we limit our analysis to the Due Process clause. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009).[2]

A statute is impermissibly overbroad if, in addition to proscribing activities that may be constitutionally prohibited, it sweeps within its coverage speech or conduct protected by the First Amendment. *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see also United States v. Salerno*, 481 U.S. 739, 746 (1987) (stating overbreadth challenge to criminal statute recognized as First Amendment challenge). The United States Supreme Court has recognized that the overbreadth doctrine is "strong medicine," to be employed with hesitation, and "only as a last resort." *New York v. Ferber*, 458 U.S. 747, 769 (1982). Within this context, we evaluate appellant's challenge to the statute. The overbreadth doctrine involves balancing the effects of discouraging constitutionally protected speech against "conduct that is so antisocial it has been made criminal." *United States v. Williams*, 553 U.S. 285, 292 (2008). The statute's overbreadth must be real and substantial before it will be invalidated on its face. *Id*. at

---

[2] Indeed, several courts, including this court, have held that the due course of law provision affords the same protections as the federal Due Process Clause. *See State v. Rudd*, 871 S.W.2d 530, 532-33 (Tex. App.—Dallas 1994, no pet.); *Saldana v. State*, 783 S.W.2d 22, 23 (Tex. App.—Austin 1990, no pet.); *Salazar v. State*, 298 S.W.3d 273, 277-78 (Tex. App. —Fort Worth 2009, pet. ref'd).

292-93. This is particularly true when conduct is involved as opposed to simply speech. *Maloney*, 294 S.W.3d at 627.

The first step in overbreadth analysis is to determine what the statute covers. *Williams*, 553 U.S. at 293. The statute at issue criminalizes the conduct of an adult, who, with the intent to arouse of gratify the sexual desire of any person, uses an electronic message or online service to intentionally communicate in a sexually explicit manner with or distribute sexually explicit materials to a minor. *See* TEX. PENAL CODE ANN. § 33.021(b); *see also Ex parte Lo*, No. PD-1560-12, 2013 WL 5807802 at *2 (Tex. Crim. App. Oct. 30, 2013). The section appellant challenges requires that the defendant believe the person to whom he is sending sexually explicit communications or materials is under seventeen, or the person on the receiving end must represent himself or herself as such. *See* TEX. PENAL CODE ANN. § 32.01(a)(1)(A), (B). "Sexually explicit" is defined as "any communication, language, or material, including a photographic or video image, that relates to sexual conduct, as defined by section 43.25." TEX. PENAL CODE ANN. § 33.021(3).

The next steps in overbreadth analysis involve the determination of whether the statute criminalizes a substantial amount of protected speech and the governmental interest served by the statute. *Williams*, 553 U.S. at 297. But we need not perform this analysis anew because the arguments appellant advances here have already been considered and rejected by this Court. In *Freeman v. State*, No.05-12-00923-CR, 2013 WL 4805698 at *8 (Tex. App.—Dallas Sept. 10, 2013, no pet. h.), we concluded that even if section 33.021(a)(1)(A) deprives an accused of a mistake-of-fact defense as to the age of the recipient, the statute does not violate a defendant's substantive due process rights and is not overly broad in violation of the First Amendment. In reaching its conclusion with regard to overbreadth, the Court noted that "preventing sexual exploitation and abuse of children 'constitutes a government objective of surpassing

importance.'" *Id*. at \*6 (citing *New York v. Ferber*, 458 U.S. at 757). The Court further stated that "the legislature has a legitimate purpose in protecting all children from sexual predators . . . and the online solicitation of a minor statute . . . does so by allowing for the prosecution of those who solicit someone whom they believe to be a child or someone who represents themselves to be a child." *Id.* at \*6. Examining the legislative history of the statute, the Court noted the legislative purpose of the statute was to "permit law enforcement officers to intercept sexual predators while they were still 'grooming' the child before they injured the child." *Id.* The Court reasoned that:

> By including in the definition of a "minor" an individual who represents himself or herself to be younger than seventeen years old, the statute permits police officers to discover and convict those adults who would communicate in a sexually explicit manner with children—and possibly attempt escalating sexual contact — before the offenders can make contact with the actual children.

Finally, the Court noted that there is no constitutionally protected right of speech to communicate sexually explicit material to a recipient who represents that he is younger than seventeen years old, or whom the actor believes is younger than seventeen years old. *Id.* at \*7. Thus, the Court concluded that to the extent appellant demonstrated any overbreadth, "the overbreadth is not substantial when compared to [the statute's] plainly legitimate sweep." *Id.* All of these conclusions are equally applicable here.

Appellant insists the statutory definition of minor is constitutionally impermissible because it might encompass an interaction with an individual who is not a minor. To this end, appellant posits that Meehan could have represented that brooke_chick13 was twenty-five years old and the statute would still be violated. We fail to grasp how these facts would violate the statute, since the scenario would involve no "minor" as defined in the statute. And to the extent appellant's argument could be interpreted to suggest that two consenting adults could be prosecuted under the statue, we note that a statute will not be invalidated as overbroad simply

because it is possible to imagine some unconstitutional scenario. *See Maloney*, 294 S.W.3d at 627.

In addition to the foregoing, we also note that appellant has failed to demonstrate that the statute is unconstitutional in all of its applications. Consequently, appellant's facial overbreadth challenge fails. *See Stantikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). Appellant's third and fourth issues are overruled. The trial court's judgments are affirmed.

Do Not Publish
TEX. R. APP. P. 47
120992F.U05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTHONY ALAMIA, Appellant

No. 05-12-00992-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-82134-2011.
Opinion delivered by Justice FitzGerald.
Justices Francis and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 5, 2014

/Kerry P. FitzGerald/

KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANTHONY ALAMIA, Appellant

No. 05-12-00993-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-82135-2011.
Opinion delivered by Justice FitzGerald.
Justices Francis and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 5, 2014

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE